ALICE R. DRAKE *vs*. METROPOLITAN MANUFACTURING COMPANY.
SAMUEL J. DRAKE *vs*. SAME.

Middlesex.    January 11, 1916. — March 4, 1916.

Present: RUGG, C. J., BRALEY, CROSBY, & PIERCE, JJ.

*Agency*, Scope of employment.    *Sale*, Conditional.

In an action against the proprietor of a store, who sold goods under contracts of conditional sale, for an assault and battery committed on the plaintiff by an alleged agent of the defendant, when he took from the plaintiff goods that he had sold to her as a canvasser of the defendant upon the cancellation by the defendant of the contract of conditional sale before the first payment had been made on it, it appeared that ten days after the sale to the plaintiff the alleged agent had left the employ of the defendant and that about three months later he returned to the defendant's employ in the capacity of a wagon driver with men under him. It further appeared that the alleged agent when he went to demand the return of the goods by the plaintiff took with him an assistant from the defendant's store and that he returned with the goods to the store and left them there. There was evidence from which the jury reasonably could infer that the alleged agent as wagon manager and as the former canvasser who had made the sale to the plaintiff was thought by the defendant to be the person best fitted to adjust the controversy with the plaintiff and to regain possession of the goods. *Held*, that there was evidence for the jury that the defendant's alleged agent was acting within the scope of his authority when he committed the assault and battery upon the plaintiff.

TWO ACTIONS OF TORT, the first for assault and battery alleged to have been committed upon the plaintiff by one William E. Durand, an agent of the defendant, and the second by the husband of the plaintiff in the first action for consequential damages. Writs dated respectively April 13, 1911, and September 21, 1912.

In the Superior Court the cases first were tried together before *Hitchcock*, J. The jury returned verdicts for the plaintiffs, and the defendant alleged exceptions, which were sustained in a decision reported in 218 Mass. 112.

The cases were tried again before *Bell*, J. At the close of the evidence, the material portion of which relating to the only question now before this court is stated in the opinion, the defendant asked the judge to make, among others, the following rulings:

"1. On the evidence the verdict should be for the defendant."

"9. If the defendant did, in fact, charge the goods to Durand,

the canvasser, and he was thereafter held liable for the value, his act in attempting to retake the goods was on his own responsibility, even although he may, at the time, have been employed by the defendant in some other capacity."

"13. If the defendant charged the goods to Durand, in effect making a sale to him, and he later in attempting to retake the goods committed an assault on the plaintiff, the fact that the goods were later left by him in the store of the defendant would not constitute a ratification of his acts committed in retaking them in the absence of any knowledge on the part of the defendant of the means which he had employed in so doing, and there is no evidence upon which it may be found that anyone in authority from the defendant knew the goods were left in the store."

"17. If you believe that the defendant employed Durand merely for the purpose of selling the goods, that thereafter it sent another representative to request the return of the goods, subsequently charged them to Durand, that the title of the goods at that time passed to him, and that Durand, in entering the house of the plaintiff on the day of the alleged assault did so for the purpose of obtaining possession in order that he might turn the goods back to the defendant and receive credit for their value, verdict must be for the defendant."

"19. If you believe that the defendant did on September 3, 1910, charge the goods to the plaintiff, your verdict should be for the defendant."

The judge refused to make these rulings and submitted the cases to the jury, who returned a verdict for the plaintiff in the first case in the sum of $2,000 and a verdict for the plaintiff in the second case in the sum of $350. The defendant alleged exceptions.

*A. E. Yont*, for the defendant.

*R. J. Lane*, for the plaintiffs.

PIERCE, J. At the close of the evidence, among other requests not now specifically argued, the defendant asked the judge to instruct the jury that "On the evidence the verdict should be for the defendant." All the evidence is not reported and although the bill of exceptions does not so state, we assume that the facts appearing in the bill of exceptions with such reasonable inferences of fact therefrom as a jury properly might draw are to be taken as all the material facts necessary to a proper determination of the

only question now raised by the defendant's bill of exceptions, to wit: "Whether Durand, at the time of the alleged assault, was acting within the scope of his employment as the agent of the defendant company."

Believing only so much of the testimony as supported the plaintiff's contention that Durand at the time when he made the alleged assault upon her was acting within the scope of his employment, the jury would have been justified in finding in substance the following facts upon the testimony of the defendant's witnesses alone. Durand as a canvasser of the defendant on July 6, 1910, entered into a contract of lease with and delivered a set of lace curtains to the plaintiff. The defendant reserved in the contract the right to cancel the lease at any time before the acceptance of a payment by an authorized collector.

Before such payment had been made the defendant in the lawful exercise of its right and in pursuance thereof notified the plaintiff on July 21, 1910, of its election to cancel the lease. It immediately thereafter made demand upon the plaintiff for a return of the goods. The plaintiff refused to redeliver the goods and a new demand was made upon the plaintiff on behalf of the defendant and was refused by the plaintiff on August 31, 1910.

On July 16, 1910, Durand left the employ of the defendant without knowledge of any purpose of the defendant to cancel the contract.

Early in October, 1910, Durand returned and entered the employ of the defendant in the capacity of wagon manager with men under him.

By special terms of his new contract it was provided that "On leases we cannot accept and verify because of their having been leased contrary to instruction, the manager will collect from the agent the amount paid by the customer and refund the same and repossess the goods."

As a canvasser Durand had authority to make contracts of lease, subject to the defendant's right to cancel at any time "until the leases are verified and one payment has been made by the customer to the regular authorized collector and accepted by us."

He also had the right and it was his duty to collect eighty cents from the customer at the time of the delivery of the goods.

As canvasser he had no further authority. Upon his return in

October, 1910, he learned for the first time that the defendant had elected to cancel the lease by notifying the plaintiff of its purpose so to do on July 21, 1910.

Durand immediately went to the house of the plaintiff, "informed her that the company had rejected the lease and that they were going to charge the goods, or had charged them, to him" and asked her to return the goods.

On November 3, 1910, Durand again went to the house of the plaintiff with one Putney, for the purpose of getting possession of the goods. After seizing the goods "he took them under his arm and went back to the store of the defendant" and placed them in the store room.

The defendant introduced evidence that under the written contract by which Durand first was employed "Agents are held responsible for leased goods until the leases are verified and one payment has been made by the customer to the regular authorized collector and accepted by us. If the collector is unable to verify or recover the goods, they will be charged to the agent at 60% and deducted from any commission, salary or security due him. If we cannot verify and accept a lease, the agent will be notified; if we cannot repossess the goods, the agent will pay for them," and contends that the jury must find upon the terms of this contract and upon all the evidence that before Durand knew of the cancellation of the lease the defendant divested itself of all interest in the goods, charged the goods to Durand and that Durand thereupon became and remained their owner.

It must be admitted that the jury could so find; but they were not bound to do so.

They could disbelieve that the defendant charged the goods to Durand, or, even if it did, that it intended to divest itself of its ownership.

Durand had left its employ, and there is nothing to show that it had any reason to think he would return or that there was any reasonable probability of satisfying its claim against him in the manner provided in the contract.

The jury might find it highly improbable that the defendant would transfer and surrender its ownership in the goods for the mere right to charge to and deduct from any commission, salary or security due Durand who was no longer in its employ.

On the other hand, it was reasonably possible for the jury to infer and believe that the defendant had not transferred its ownership to Durand but that it continued to retain it and with it the right and desire of possession.

They could also reasonably infer that Durand as wagon manager and ex-agent and canvasser was thought by the defendant to be best fitted to adjust the controversy with the plaintiff and that he was accordingly directed to take the matter in charge and to regain possession of the defendant's property.

This inference is strengthened by the fact that Durand took with him an assistant from the store of the defendant, returned with the goods to the store room and left them there.

The facts do not seem in any essential particulars to differ from those presented when this case was formerly before this court. *Drake* v. *Metropolitan Manuf. Co.* 218 Mass. 112.

The presiding judge could not properly have given the requests of the defendant and the exceptions must be overruled.

*So ordered.*